## HILL v. S. E. MASSENGILL CO.

Civil Action No. 974–J.

District Court, S. D. Florida,
Jacksonville Division.

Dec. 30, 1946.

Freeman, Richardson & Watson, of Jacksonville, Fla., for plaintiff.

Charles Cook Howell and Howell, McCarthy, Lane & Howell, all of Jacksonville, Fla., for defendant.

DE VANE, District Judge.

This suit was brought by plaintiff to recover damages for breach of an employment contract. Defendant is engaged in the manufacture and sale of drugs, medicines and pharmaceutical products. Plaintiff was first employed by defendant in June, 1940, as traveling salesman and representative under a written contract for a specified time. Plaintiff was assigned a territory in Florida in which he was to sell defendant's products. The original contract was renewed from year to year until January 1, 1945, when a new form of contract was entered into between plaintiff and defendant, which was to remain "in full force and effect for one year and thereafter until ten days' notice is given by one of the parties of his intention to terminate the agreement, but may be cancelled by either party without notice at any time in case the other party should violate any of the terms and conditions."

Paragraph (19) of the contract provided as follows:

"(19) Party of the second part agrees to give his entire time and energy to the party of the first part and agrees to carry no side lines of any character, and in the event of the second party violating this feature of the contract, he hereby agrees to forfeit to party of the first part any and all money that may be due by the first party, and agrees to make further restitution to party of the first part in such amount as may be judiciously determined."

During the early part of September, 1945, defendant received an anonymous letter (Defendant's Exhibit "C") reporting that plaintiff was in some way connected with The Hill Laboratories, the C. F. Kirk Company and was marketing a preparation known as R. S. Lotion. By letter dated September 7, 1945, defendant requested that plaintiff make a complete report as to these activities. Plaintiff replied by undated letter (Plaintiff's Exhibit 4) explaining these activities and concluded this letter with the following statement:

"This report is correct in every detail. Should you doubt it I would advocate that you request my bag as a man that will lie will steal."

Upon receipt of this letter, under date of September 13, 1945, defendant wrote plaintiff, stating:

"Under the circumstances as they appear to exist we feel that it will be the best for all concerned that we accept your resignation from our sales organization."

In response to this letter plaintiff returned his "bag" with all samples of defendant's products and in due course of time this suit followed.

The Hill Laboratories had an earlier name, which appears frequently in the record and R. S. Lotion was also given a different name, which also appears in the record, but as the changes in names are unimportant the references throughout this Opinion will be to The Hill Laboratories and to R. S. Lotion.

There is some conflict in the testimony as to plaintiff's activities with The Hill Laboratories, the marketing of R. S. Lotion and plaintiff's connection with the C. F. Kirk Company. Plaintiff testified that his sole connection with these ventures was financial and that the maximum time he spent on them was signing letters and making his credit available for the purchase of supplies. Plaintiff also testified that R. S. Lotion was manufactured by The Hill Laboratories of which he was the sole owner.

Plaintiff further testified that before producing the R. S. Lotion he informed defendant of requests for a lotion of this character and asked defendant to produce it. Plaintiff further testified that after defendant refused to produce the lotion he decided to go ahead with it himself and that a Mr. Murphy was hired to make the lotion and to supervise all sales of the lotion for which he would receive twenty-five percent of the profits. Murphy was not called as a witness by either party.

Witnesses for defendant, including plaintiff's former wife, testified that all Murphy did was make the lotion and put it in five gallon glass containers and that plaintiff and his former wife attended to the bottling of the lotion and that plaintiff was in sole charge of marketing the same.

The record is not clear as to plaintiff's connection with the C. F. Kirk Company. Plaintiff testified that the activities of The Hill Laboratories made it desirable and plaintiff secured from the C. F. Kirk Company a State franchize for ampuls and the record shows that plaintiff did buy a quantity of ampuls. Plaintiff testified that at no time did he attempt to sell any product of the Kirk Company to defendant's customers and that due to financial difficulties it became necessary to turn the ampuls he had purchased from the C. F. Kirk Company over to Halliday's Apothecary.

The evidence in the case shows beyond question that The Hill Laboratories became quite active in the Summer of 1945 in the effort to manufacture and sell R. S. Lotion and that some of this product was sold. The question presented on the record is whether the activities of plaintiff, in connection with The Hill Laboratories, the R. S. Lotion and the C. F. Kirk Company, constituted a breach of Paragraph (19) of plaintiff's contract with defendant. If it constituted such breach then defendant was free, under Paragraph (19) to terminate the contract without notice to plaintiff.

Plaintiff's first contention is that at all times he performed under his contract according to the provisions thereof and was never guilty of a breach. The evidence does not sustain this contention. The preponderance of the evidence discloses that plaintiff was the sole owner of The Hill Laboratories and was actively connected

with the preparation and marketing of R. S. Lotion, manufactured and sold as a Hill Laboratories' product. Such activity on the part of plaintiff was a violation of Paragraph (19) of the contract between the parties.

█ The second contention urged upon the court by plaintiff is that Mr. Larry Cook, defendant's Florida Superintendent and plaintiff's supervising superior, had the power to deal with plaintiff in all matters affecting the interests of employees of defendant under the contract and that Cook waived defendant's right to discharge plaintiff by virtue of his connection with The Hill Laboratories and R. S. Lotion. The testimony likewise failed to sustain this contention of plaintiff. Cook ceased to be an employee of defendant at the end of January, 1945. While the testimony shows that Hill's activities in connection with the manufacture of R. S. Lotion began in the Fall of 1944, his real activities in this connection amounted to little until after Cook had terminated his connection with the defendant. While the record fails to show that Cook possessed the authority to waive defendant's right to discharge plaintiff by reason of plaintiff's connection with The Hill Laboratories and R. S. Lotion, the Court holds that the record totally fails to show that Cook actually did so or even attempted to do so.

█ The third contention advanced by plaintiff is that the contract must be interpreted according to the construction placed upon same by the parties at the time of its execution and that the parties intended and anticipated that employees would have interests other than their regular employment with the defendant. The difficulty with this contention is that plaintiff either fails or refuses to distinguish between what activity might be appropriate and what might be highly inappropriate. Plaintiff seems to think that makes no difference. He contends that if he could have any outside interests he could, in all propriety, be connected with a competitive outside interest. Any such interpretation of the contract would make Paragraph (19) entirely meaningless.

The last contention advanced by plaintiff is that since he had been a faithful, successful and hardworking employee of defendant that defendant should not have terminated its contract with him until it had first given him an opportunity "to give up either his employment or his other interests."

The terms of the contract are clear and specific and the only authority that may be exercised by the Court, in this connection, is to determine whether plaintiff breached the contract. Having so determined, what the future relationship between plaintiff and defendant might be is of no concern of this Court.

Counsel for the parties raised and argued the question as to whether plaintiff resigned or was discharged. The Court considers this point unimportant. The evidence clearly shows a breach of the contract on the part of plaintiff and it matters not whether plaintiff resigned or was discharged. The only importance that may be attached to this matter is defendant's rights if plaintiff did not resign, but was discharged.

Under Paragraph (19) of the contract, plaintiff suffered certain penalties for a breach of contract, including a forfeiture of any money that may be due him by the defendant. In treating plaintiff's letter (Plaintiff's Exhibit 4) as an offer to resign, defendant accepted same and did not invoke the forfeiture authorized by Paragraph (19) of the contract, and later tendered plaintiff its check for all salary and commissions due plaintiff to date. Plaintiff declined to accept the check. Whether or not defendant now pays plaintiff the amount due must be left to the good conscience of defendant.

This memorandum opinion will serve as findings of fact and conclusions of law in this case.